UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAR-FRESHNER CORPORATION; and JULIUS
SÄMANN, LTD.,

                              Plaintiffs,

                                                      5:19-CV-0289
v.                                                    (GTS/ATB)

JUST FUNKY LLC,

                              Defendant.
_____

APPEARANCES:                              OF COUNSEL:

BOND, SCHOENECK & KING, PLLC              LOUIS ORBACH, ESQ.
  Counsel for Plaintiffs                  LIZA R. MAGLEY, ESQ.
  One Lincoln Center
  Syracuse, NY 13202

RITZLER, COUGHLIN & PAGLIA, LTD           PATRICK J. THOMAS, ESQ.
  Counsel for Defendant
  1360 East Ninth Street, 500 IMG Center
  Cleveland, OH 44114

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this trademark infringement action filed by Car-Freshener

Co. and Julius Sämann, Ltd. ("Plaintiffs") against Just Funky LLC ("Defendant"), is Plaintiffs'

motion to strike sixteen of Defendant's thirty affirmative defenses in its Answer pursuant to Fed.

R. Civ. P. 12(f). (Dkt. No. 8.) For the reasons stated below, Plaintiffs' motion is granted.

## I.    RELEVANT BACKGROUND

In their Complaint, Plaintiffs allege that they have manufactured "Black Ice" products

under three federal trademarks in Watertown, New York, for more than 60 years.  (Dkt. No. 1.)

Plaintiffs further allege that, despite their possession of these trademarks, Defendant sold

thousands of air fresheners using the term "Black Ice" to the retail chain Hot Topic, including at

least one allegedly infringing product at the Salmon Run Mall Hot Topic in Watertown, New

York.  (*Id.*)

In its Answer, Defendant asserts thirty affirmative defenses.  (Dkt. No. 7.)

In their Motion to Strike, Plaintiffs argue that Defendant's Answer "contains a litany of

boilerplate affirmative defenses, unadorned by any allegations of supporting facts."  (Dkt. No. 8,

Attach. 1, at 4 [attaching Page "1" of Plfs.' Memo. of Law].)  More specifically, Plaintiffs argue

that sixteen of Defendant's thirty affirmative defense should be stricken pursuant to Fed. R. Civ.

P. 12(f) due to an insufficient factual basis to support them.  (*Id.*)  Defendant has not responded

to Plaintiffs' motion to strike.  (*See generally* Docket Sheet.)  Plaintiffs have confirmed with

Defendant that this non-response was intentional.  (Dkt. No. 15.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Strike an Affirmative Defense for Failure to State a Claim

Although district courts within the Second Circuit have in the past considered the

assertion of an affirmative defense without supporting facts to be sufficient, the Second Circuit

has recently clarified what qualifies as a sufficient affirmative defense in *GEOMC Co. v.

Calmare Therapeutics Inc.*, 918 F.3d 92, 98-99 (2d Cir. 2019).

In its clarification of the affirmative-defense standard, the Second Circuit has focused on

the three-factor test used by the Southern District of New York to assess affirmative defenses in

*S.E.C. v. McCaskey.  GEOMC Co.*, 918 F.3d at 96-97 (citing *S.E.C. v. McCaskey*, 56 F. Supp. 2d

323, 326 [S.D.N.Y. 1999]).  The *McCaskey* three-factor test requires a plaintiff to show as

follows: "(1) there is no question of fact which might allow the defense to succeed; (2) there is

no question of law which might allow the defense to succeed; and (3) the plaintiff would be

prejudiced by inclusion of the defense."  *McCaskey*, 56 F. Supp. 2d at 326.

     In *GEOMC Co.*, the Second Circuit refined the first *McCaskey* factor[1] by finding that the

plausibility standard of *Bell Atlantic Corp. v. Twombly* "applies to determining the sufficiency of

all pleadings, including the pleading of an affirmative defense, but with recognition that, as the

Supreme Court explained in *Iqbal*, applying the plausibility standard is a 'context-specific' task."

*GEOMC Co.*, 918 F.3d at 98-99; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 548-49

(2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

     The undersigned notes that, as originally articulated, the first *McCaskey* factor uses

language that is reminiscent of *Conley v. Gibson*'s "no set of facts" language.[2]  *McCaskey*, 56 F.

Supp. 2d at 326; *Conley v. Gibson*, 355 U.S. 41, 46 (1957).  "This 'no set of facts' language can

be read in isolation as saying that any statement revealing the theory of the claim will suffice

unless its factual impossibility may be shown from the face of the pleadings."  *Twombly*, 550

U.S. at 561.

     Because this "no set of facts" language allowed wholly conclusory statements to survive a

---

[1]    Again, this factor is that "there is no question of fact which might allow the
defense to succeed[.]"  *McCaskey*, 56 F. Supp. 2d at 326.

[2]    More specifically, this language is as follows: "[A] complaint should not be
dismissed for failure to state a claim unless it appears beyond doubt that a plaintiff can prove no
set of facts in support of his claim which would entitle him to relief."  *Conley*, 255 U.S. at 46-47.

motion to dismiss, *Twombly* retired the "no set of facts" language and established the plausibility standard to create a heightened threshold.  *Id.*

The Second Circuit in *GEOMC Co.* extended the *Twombly* plausibility standard to affirmative defenses to equally ensure that affirmative defenses survive motions to strike only if the defendant produces a sufficient factual basis.  *GEOMC Co.*, 918 F.3d at 98-99. To satisfy the *Twombly* plausibility standard, a pleading must demonstrate that the pleading party has grounds for relief beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  *Twombly*, 550 U.S. at 555.  Thus, the pleading party must produce allegations of fact that provide a sufficient basis for the court to draw a reasonable inference in favor of the party.  *Iqbal*, 556 U.S. at 678.

*Iqbal* contributed to the *Twombly* plausibility standard by acknowledging that a court's review of a pleading based on the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

The second *McCaskey* factor[3] embodies the well-established point of law that courts may not determine "disputed and substantial questions of law" at the motion-to-strike stage.  *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984).  To qualify as a disputed and substantial question of law, the question of law must not have been previously addressed by the courts or must have been answered differently when courts addressed the question, leaving the law "confus[ing] and unsettled[.]"  *Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*, 278 F. Supp. 2d 313, 325 (N.D.N.Y. 2003)

---

[3]     Again, this factor is that "there is no question of law which might allow the defense to succeed[.]"  *McCaskey*, 56 F. Supp. 2d at 326.

(quoting *Salcer*, 744 F.2d at 939). Thus, the second *McCaskey* factor echoes the point of law that "[c]lose or new questions of law should *not* be resolved on a motion to strike[.]" *Canadian St. Regis*, 278 F. Supp. 2d at 325 (quoting *Mohegan Tribe v. State of Conn.,* 528 F. Supp. 1359, 1362 [D. Conn. 1982]) (emphasis added). Without this requirement, "courts would 'run the risk of offering an advisory opinion on an abstract and hypothetical set of facts.'" *Canadian St. Regis*, 278 F. Supp. 2d at 325 (quoting *Salcer,* 744 F.2d at 939).

Regarding the third *McCaskey* factor,[4] the Second Circuit in *GEOMC Co.* clarified the circumstances in which prejudice may form the basis of dismissing an affirmative defense. *GEOMC Co.*, 918 F.3d at 98. According to *GEOMC Co.*, "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id.* A reasonable implication (although not an inescapable logical deduction) of this pronouncement is that a lack of factual sufficiency and/or legal validity may tend to prejudice a plaintiff by expanding the scope of the litigation.

## B.     Effect of Defendant's Failure to Respond to Plaintiffs' Motion to Strike

In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, to succeed on that argument, the movant need only to show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure

---

[4]     Again, this factor is that "the plaintiff would be prejudiced by inclusion of the defense." *McCaskey*, 56 F. Supp. 2d at 326.

to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL2672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases)*; Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn. 2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

With the movant's lightened burden in mind, the Court evaluates the sixteen affirmative defenses challenged by Plaintiffs' motion to strike.  The sixteen affirmative defenses are as follows:

> **First Affirmative Defense:** "Defendant is not subject to personal jurisdiction in this District."

> **Third Affirmative Defense:** "Venue is not proper in this District."

> **Twelfth Affirmative Defense:** "At all times, Defendant had, and continues to have, a reasonable, good faith belief that it has the legal right to make, use, sell, and promote any goods or products, if any, claimed by Plaintiffs."

> **Thirteenth Affirmative Defense:** "Defendant has permission to use its products and therefore cannot be held liable to Plaintiff."

> **Fourteenth Affirmative Defense:** "Plaintiffs' claims are barred by doctrine of waiver."

> **Fifteenth Affirmative Defense:** "Plaintiffs' claims are barred by estoppel by acquiescence."

> **Sixteenth Affirmative Defense:** "Plaintiffs' claims are barred by doctrine of laches."

> **Seventeenth Affirmative Defense:** "Plaintiffs' claims are barred by doctrine of equitable

estoppel."

**Eighteenth Affirmative Defense:** "Plaintiffs' claims are barred by the doctrine of unclean hands generally."

**Nineteenth Affirmative Defense:** "Plaintiffs' claims are barred by the doctrine of unclean hands in that their selective enforcement of said marks."

**Twentieth Affirmative Defense:** "Plaintiffs' claims are barred by their failure to enforce marks against others."

**Twenty-First Affirmative Defense:** "Plaintiffs' claims are barred by the benefit they received by any act or omission of Defendant, if any."

**Twenty-Second Affirmative Defense:** "Plaintiffs are estopped in bringing these claims by their anti-competitive and unfair trade practices."

**Twenty-Third Affirmative Defense:** "All marks are generic and not entitled to protection."

**Twenty-Fifth Affirmative Defense:** "Plaintiffs have failed to join necessary and indispensable parties for just adjudication of these claims. Therefore, Plaintiffs' claims cannot stand."

**Twenty-Seventh Affirmative Defense:** "Defendant is entitled to use any claimed mark under the fair use doctrine."

(Dkt. No. 7.)

## A.    First Affirmative Defense

Regarding the first *McCaskey* factor's application to the first affirmative defense (lack of personal jurisdiction), Defendant offers no factual basis to substantiate the defense.

Regarding the second *McCaskey* factor, the Court finds that there are no disputed and

substantial questions of law with respect to the Court's authority to assert personal jurisdiction

over a non-domiciliary. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir.

2010). To assert jurisdiction, the Court conducts a two-step analysis by (1) applying New York's

long-arm statute and (2) analyzing whether the personal jurisdiction complies with the Due

Process Clause of the United States Constitution. *Chloé*, 616 F.3d at 163-64. New York's

long-arm statute states as follows: "As to a cause of action arising from any of the acts

enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . .

. who in person or through an agent: 1. transacts any business within the state or contracts

anywhere to supply goods or services in the state . . . ." N.Y. C.P.L.R. § 302(a) (McKinney). To

analyze whether the personal jurisdiction complies with the Due Process Clause, the Court must

conduct a minimum-contacts inquiry and a reasonableness inquiry. *Chloé*, 616 F.3d at 164. To

evaluate whether Defendant has sufficient contacts within the forum state, the Court assesses

"the quality and nature of the defendant's contacts with the forum state under a totality of the

circumstances test[.]" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (internal

quotation marks and citations omitted). To conduct the reasonableness inquiry, the Court uses

the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the case;
> (3) the plaintiff's interest in obtaining convenient and effective relief;
> (4) the interstate judicial system's interest in obtaining the most
> efficient resolution of the controversy; and (5) the shared interest of
> the states in furthering substantive social policies.

*Chloé*, 616 F.3d at 164.

Regarding New York's long-arm statute, the Court may exercise personal jurisdiction

over Defendant, a domiciliary of Ohio, because Defendant sold its allegedly infringing product to Hot Topic, a retailer who resold the product in the Northern District of New York. (Dkt. Nos. 1, 7, 8.) Regarding the minimum-contacts and reasonableness inquiries, the Due Process Clause is complied with because nearly all of the five factors set forth in *Chloé* weigh in favor of exercising personal jurisdiction here.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the first affirmative defense should be stricken.

**B.      Third Affirmative Defense**

Regarding the first *McCaskey* factor's application to the third affirmative defense (improper venue), Defendant did not offer any factual basis for this defense. (Dkt. No. 7.) Plaintiffs have specified that they have manufactured the "Black Ice" air fresheners in Watertown, New York, for more than 60 years. (Dkt. Nos. 1, 8.) Furthermore, Plaintiffs highlighted the fact that Defendant sold its allegedly infringing product to Hot Topic, a retailer who resold the product in the Northern District of New York. (*Id.*) Specifically, according to Plaintiffs, a customer purchased one of Defendant's allegedly infringing products at the Salmon Run Mall Hot Topic in Watertown, New York. (*Id.*) Based on the information both parties provided to the Court, the Court finds that there is no substantial evidentiary basis for the Court to draw a reasonable inference in Defendant's favor.

Regarding the second *McCaskey* factor, the Court finds that there is no disputed and substantial question of law with respect to the availability of venue here. 28 U.S.C. § 1391.

Specifically, 28 U.S.C. § 1391(b)(2) establishes that this Court has venue because the events giving rise to the claim occurred within this jurisdiction, in Watertown, New York. *Id*.

Regarding the third *McCaskey* factor, that Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the third affirmative defense should be stricken.

### C.    Twelfth Affirmative Defense

Regarding the first *McCaskey* factor's application to the twelfth affirmative defense (good faith), Defendant asserted that it has a "good faith belief that it has the legal right to make, use, sell, and promote any goods or products, if any, claimed by Plaintiffs." (Dkt. No. 7.) However, Defendant offers no factual basis for this good-faith belief. (*Id.*)

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law with respect to the lack of an effect of a copyright infringer's good-faith belief here. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001) ("Honest users can infringe by reason of oversight or good faith mistake . . . [by believing] that the work was in the public domain, that his licensor was duly licensed, or that his use was protected by fair use.").

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the twelfth affirmative defense should be stricken.

### D.    Thirteenth Affirmative Defense

Regarding the first *McCaskey* factor's application to the thirteenth affirmative defense

(permission), Defendant has stated only that it had permission to use its products and could therefore not be held liable, without providing any factual basis for this statement. (Dkt. No. 7.)

Regarding the second *McCaskey* factor, a trademark owner (and not a third-party) must be the entity that grants permission to use its marks, because it possesses the exclusive right to use the mark. 15 U.S.C. § 1065 (2010). Defendant does not allege that Plaintiffs granted it permission. Thus, there is no disputed and substantial question of law with respect to the unavailability of this defense here.

Regarding the third *McCaskey* factor, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the thirteenth affirmative defense should be stricken.

### E. Fourteenth Affirmative Defense

Regarding the first *McCaskey* factor's application to the fourteenth affirmative defense (waiver), Defendant has not provided any factual basis for waiver. (Dkt. No. 7.) Therefore, the fourteenth affirmative defense does not meet the *Twombly* plausibility standard.

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law with respect to the inapplicability of New York's waiver law here. *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 428 (S.D.N.Y. 2010) (citing *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,* 707 F.2d 680, 685 [2d Cir. 1983]). "To establish waiver under New York law one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it." *Coach, Inc.*, 756 F.

Supp. 2d 421, 428 (citing *Voest-Alpine Int'l Corp.*, 707 F.2d at 685).

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the fourteenth affirmative defense should be stricken.

### F.      Fifteenth Affirmative Defense

Regarding the first *McCaskey* factor's application to the fifteenth affirmative defense (estoppel by acquiescence), Defendant has not provided any factual basis for estoppel by acquiescence. (Dkt. No. 7.)

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law with respect to the unavailability of estoppel by acquiescence here. *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 294 F.3d 383, 395 (2d Cir. 2002). The elements of estoppel by acquiescence are as follows: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Times Mirror Magazines*, 294 F.3d at 395.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the fifteenth affirmative defense should be stricken.

### G.      Sixteenth Affirmative Defense

Regarding the first *McCaskey* factor's application to the sixteenth affirmative defense (laches), Defendant has not provided any factual basis for the application of laches. (Dkt. No. 7.)

Regarding the second *McCask*ey factor, there is no disputed and substantial question of law with respect to the inapplicability of the doctrine of laches here. While the Lanham Trademark Act does not have a specific statute of limitations, this Court applies New York's six-year statute of limitations for fraud claims in a New York suit. *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018) (citing *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 [2d Cir. 1996]).

Applying this statute of limitations, "there is no presumption of laches and the burden remains on the [infringer] to prove the defense" if the trademark owner brought the claim within six years of when the owner knew or should have known that he had a valid infringement claim. *Excelled Sheepskin & Leather Coat Corp.*, 897 F.3d at 419 (citing *Conopco, Inc.*, 95 F.3d at 192, and *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 70 [2d Cir. 2002]). Based on the information provided to the court, Plaintiffs brought the claim within six years of knowing they had a claim. (Dkt. No. 1.) Therefore, there is no question of law that might allow the doctrine of laches affirmative defense to succeed.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the sixteenth affirmative defense should be stricken.

H.      **Seventeenth Affirmative Defense**

Regarding the first *McCaskey* factor's application to the seventeenth affirmative defense (equitable estoppel), Defendant simply states that Plaintiffs' claims are barred by the doctrine of equitable estoppel without providing factual basis for this statement. (Dkt. No. 7.) Therefore, the seventeenth affirmative defense does not meet the *Twombly* plausibility standard.

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law with respect to the inapplicability of the doctrine of equitable estoppel here. *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326-27 (2d Cir. 2004). The elements of equitable estoppel are as follows: "(1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice." *Veltri*, 393 F.3d at 326-27. Because Defendant has not alleged any misrepresentation by Plaintiffs, there is no question of fact or law that would allow the doctrine of equitable estoppel to bar Plaintiffs' claims.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the seventeenth affirmative defense should be stricken.

I.      **Eighteenth and Nineteenth Affirmative Defenses**

The eighteenth affirmative defense invokes the doctrine of unclean hands generally whereas the nineteenth affirmative defense reiterates that the doctrine of unclean hands bars Plaintiffs' claims but specifies that Plaintiffs' selective enforcement of their trademarks invoked the doctrine of unclean hands. (Dkt. No. 7.) Regarding the first *McCaskey* factor's application to the eighteenth affirmative defense (unclean hands generally) and the nineteenth affirmative

defense (selective enforcement), Defendant did not provide any factual bases for either of these affirmative defenses.

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law with respect to the inapplicability of the doctrine of unclean hands here. To bar a party's claim pursuant to the unclean hands doctrine, the Court must find that "the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is 'directly related to the subject matter in litigation' and has injured the party attempting to invoke the doctrine." *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (citing *Weiss v. Mayflower Doughnut Corp.*, 135 N.E.2d 208 [1956]).

To constitute an unconscionable act, the conduct must rise to the level of "brazen behavior." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999). The court may determine what qualifies as an unconscionable at its discretion, which is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F. Supp. 969, 969-70 (S.D.N.Y. 1992) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245-46 [1933]).

However, that discretionary power does not create a question of law regarding whether selective trademark enforcement qualifies as an unconscionable act. *See Goldstein v. Delgratia Mining Corp.,* 176 F.R.D. 454, 458 (S.D.N.Y. 1997) (finding multiple misrepresentations to court regarding law and facts qualifies as an unconscionable act); *Aris-Isotoner Gloves, Inc.,* 792 F.Supp. at 970 (finding fabrication of testimony constituted an unconscionable act); *but see Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 256 (S.D.N.Y. 2012) (finding that the

15

tactical decision to file a trademark infringement lawsuit does not constitute an unconscionable act); *Coach, Inc. v. Kmart Corp.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010) ("Filing a trademark or trade dress infringement lawsuit, therefore, cannot be a basis for an unclean hands defense to that lawsuit because any bad faith or inequitable conduct in filing the lawsuit is unrelated to the plaintiff's acquisition or use of the trademark or trade dress rights."); *6 McCarthy on Trademarks and Unfair Competition* § 31:51 (5th ed.) ("The allegedly unfair or improper filing of a trademark infringement lawsuit cannot itself constitute a basis for an unclean hands defense to that lawsuit."). Therefore, even if Defendant provided sufficient factual support to establish that Plaintiffs had selectively enforced their trademarks, that selective enforcement would not bar their claims.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the eighteenth and nineteenth affirmative defenses should be stricken.

### J.       **Twentieth Affirmative Defense**

Regarding the first *McCaskey* factor's application to the twentieth affirmative defense (failure to enforce), Defendant provides no factual basis for this defense beyond the nineteenth affirmative defense's conclusory assertion of selective enforcement. (Dkt. No. 7.) This insufficient factual basis satisfies the first *McCaskey* factor.

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law that would allow Defendant to prevail on this defense. Construing the defense in the light most favorable to Defendant, the reference to failure to enforce marks may refer to abandonment

16

of the mark or selective enforcement of the mark, neither of which would allow Defendant to succeed.

Abandonment does not create a question of law because courts have clearly defined what constitutes abandonment. A trademark owner's mere failure to police its marks does not cause those marks to become generic and unenforceable. *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 110 (2d Cir. 2000). An owner has abandoned a mark when (1) the owner's conduct causes the mark to become generic or lose significance, or (2) the owner intends to abandon the mark. 15 U.S.C. § 1127.

A violation of equal protection by selective enforcement equally fails to establish a question of law. While courts acknowledge that "selective enforcement is a murky corner of equal protection law in which there are surprisingly few cases," this murkiness does not create a question of law that would allow Defendant to succeed. *LaTrieste Rest. & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders,* 627 F.2d 606, 608 (2d Cir. 1980)) (quotations omitted).

> A violation of equal protection by selective enforcement arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996) (citations omitted).

Thus, while selective enforcement may be a murky doctrine, there is no question of law that arises from the doctrine that would allow Defendant's claim to succeed.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time

and undue delay of discovery completion and trial.  As a result, the Court finds that the twentieth affirmative defense should be stricken.

### K.   Twenty-First Affirmative Defense

Regarding the first *McCaskey* factor's application to the twenty-first affirmative defense (benefit received), Defendant does not provide a sufficient factual basis to meet the *Twombly* standard.  (Dkt. No. 7.)

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law that would allow Defendant to prevail on this defense.  Moreover, courts focus on the dilution that another party's use of a mark may cause, not on the alleged benefits of that use.  15 U.S.C. § 1125.  Therefore, there is no question of fact or law that would allow the twenty-first affirmative defense to bar Plaintiffs' claims.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial.  As a result, the Court finds that the twenty-first affirmative defense should be stricken.

### L.   Twenty-Second Affirmative Defense

Regarding the first *McCaskey* factor's application to the twenty-second affirmative defense (estoppel), Defendant provides no factual basis for this defense.

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law with respect to whether trademark enforcement qualifies as anti-competitive and unfair trade practices, because the Lanham Trademark Act seeks to promote competition, not hinder it.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992).  The Lanham Trademark Act's

purpose is to "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers. National protection of trademarks is desirable, Congress concluded, because trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation." *Two Pesos, Inc.*, 505 U.S. at 774.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the twenty-second affirmative defense should be stricken.

### M. Twenty-Third Affirmative Defense

Regarding the first *McCaskey* factor's application to the twenty-third affirmative defense (marks are generic and not entitled to protection), Defendant provides no factual basis for this defense.

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law that would allow Defendant to prevail on this defense. The Court notes that Plaintiffs own three federal trademarks for the "Black Ice" marks. (Dkt. No. 7.) The most relevant of these marks is the air freshener trademark (Registration No. 3,126,834) effective August 8, 2006. (Dkt. Nos. 1, 8.) According to the Lanham Trademark Act, generic marks do not meet the trademark registration standards. 15 U.S.C. § 1052 (2006). The air freshener's 2006 registration undermines Defendant's assertion. This Court will not second guess the United States Patent and Trademark Office's decision that this "Black Ice" mark meets trademark standards solely based on the assertion that these "marks are generic and not entitled to protection." (Dkt. Nos. 1, 8.)

19

Because the factual information provided to the Court undermines Defendant's claim and the Lanham Trademark Act delineates what qualifies as generic, there is no question of fact or law.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the twenty-third affirmative defense should be stricken.

### N.    Twenty-Fifth Affirmative Defense

Regarding the first *McCaskey* factor's application to the twenty-fifth affirmative defense (failure to join), Defendant did not indicate which party qualified as necessary and indispensable or provide any factual allegations to support the defense. (Dkt. No. 7.)

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law that would allow Defendant to prevail on this defense. Rather, Fed. R. Civ. P. 19 clearly defines what constitutes a necessary and indispensable party. Fed. R. Civ. P. 19.

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial. As a result, the Court finds that the twenty-fifth affirmative defense should be stricken.

### O.    Twenty-Seventh Affirmative Defense

Finally, regarding the first *McCaskey* factor's application to the twenty-seventh affirmative defense (fair use), Defendant provides no factual basis for this defense. (Dkt. Nos. 1, 8.)

Regarding the second *McCaskey* factor, there is no disputed and substantial question of law with respect to the inapplicability of the fair use doctrine here.  To establish a fair use affirmative defense, "the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013); *see also* 15 U.S.C. § 1115(b)(4).

Regarding the third *McCaskey* factor, the Court finds that, because of the factual and legal invalidity of the defense, the defense would cause prejudice to Plaintiff through waste of time and undue delay of discovery completion and trial.  As a result, the Court finds that the twenty-seventh affirmative defense should be stricken.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion to strike sixteen of Defendant's affirmative defenses for failure to state a claim upon which relief can be granted (Dkt. No. 8) is **<u>GRANTED</u>**, and those affirmative defenses are **<u>STRICKEN</u>**.

Dated: November 25, 2019
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge